IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 07-26-H-CCL |
| | CV 10-38-H-CCL |
| Plaintiff, | |
| -v- | ORDER |
| SHAWN KEVIN JACKSON, | |
| Defendant. | |

*******

Before the Court is Defendant Shawn Jackson's Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255. The government opposes the motion.

Defendant Jackson was convicted on April 10, 2008, by jury trial of an Indictment charging him with receipt and possession of child pornography. The possession count was dismissed by the government prior to sentencing. Defendant

Jackson's Guideline Range under the U.S. Sentencing Guidelines was a term of imprisonment of 135-168 months. On September 26, 2008, Defendant Jackson was sentenced to a term of 75 months imprisonment, followed by a lifetime term of supervised release. Defendant Jackson appealed his conviction and sentence to the Court of Appeals for the Ninth Circuit, which affirmed. *United States v. Jackson*, 344 Fed.Appx. 390 (9th Cir. 2009) (unpublished). This Court observed the performance of Defendant's three retained attorneys through their pre-trial motion practice and through their courtroom conduct during the four-day trial, as well as at sentencing.

Defendant Jackson now argues that his counsel gave him ineffective assistance of counsel by their failure to move to suppress the computer evidence on which the government relied to convict. Defendant Jackson argues that his counsel could have and should have moved to suppress this evidence because there was no probable cause to support the issuance of a warrant to search his residence.

**Legal Standard**

Such a claim of ineffective assistance of counsel requires a showing that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court need only consider one of these requirements if it is dispositive of the claim. *Id*. at 697. Defendant must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

There is, however, a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Competent counsel need not raise every conceivable nonfrivolous defense. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Failure to take a futile action is not deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

A search warrant is valid under the Fourth Amendment if it is supported by probable cause. Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found" in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Evidence obtained when a warrant is not supported by probable cause is generally inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 655-57, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, the exclusionary rule does not apply when agents act in objectively reasonable good-faith reliance on the search warrant issued by a detached and neutral magistrate. *Leon v. United States*, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**Discussion**

An Application for a Search Warrant and Affidavit was prepared by Special Agent Aaron M. Reller of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") . The Search Warrant was issued by Magistrate Jeremiah C. Lynch after he found probable cause to search Defendant's residence.

The Affidavit contains the following factual allegations: In 2006, ICE began investigating a commercial child pornography website known as "Home Collection," and ICE discovered that this umbrella website was operating numerous other member-restricted child pornography websites utilizing PayPal accounts to process payments. Analysis of PayPal transaction logs provided names and addresses of customers purchasing access to these websites. Defendant Shawn Jackson was identified by name as one such customer. On January 29, 2007, Defendant made a payment to a PayPal account to purchase access to a member-restricted website known as "CP City 2007." This website contains images of prepubescent minors engaged in sexually explicit conduct. Defendant paid $99.95 for his membership in the CP City 2007 website. In the January 29, 2007, transaction, Defendant provided a Yahoo email account and gave his primary address as "p o box [###] east helena MT, 59635 US". His last previous website access was July 2, 2006. Defendant also provided an evening phone number. (Doc. 94-1 ¶ 36.)

This information in hand, the ICE Special Agent contacted the United States Postal Service for information regarding "p o box [###] east helena MT". The

ICE agent learned that an individual by the name of Shawn Jackson was receiving mail at this post office box, which post office box was also associated with a physical address known as " [## street name], Clancy, Montana 59634."  The ICE agent examined motor vehicle registrations for Shawn Jackson and found that Jackson had a registered vehicle (a 1997 Chevy Suburban, [license plate #]) and two addresses associated with this registration: "P.O. Box [###] East Helena, MT 59635" and "[## street name], Clancy, MT 59634", which are identical to the mailing and street addresses given by the United States Postal Service. Surveillance showed that the physical address located at [## street name], Clancy, Montana, was Shawn Jackson's residence.  Surveillance also showed that Jackson's vehicle was parked both at his residence, [## street name], Clancy, Montana, and also at a business in Montana City, MT.

A search of Defendant's criminal history on the NCIS system showed that, five years earlier, in 2002, Defendant Jackson had been charged with stalking (later dismissed) and making obscene phone calls ($245 fine, 90 days jail suspended, 90 days deferred sentence, dismissed).  (Doc. 94-1, ¶ 38-39.)

Based upon this Court's review of the magistrate's probable cause

determination, this Court finds that the magistrate had a substantial basis to conclude that sufficient probable cause existed to support the issuance of the search warrant. It appears that defense counsel did not file a motion to suppress the search warrant for lack of probable cause because such a motion would have been futile.

In its opposition brief, the government brings to the Court's attention the case of *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), because it is factually similar to this case. Bach argued that "there was no probable cause to search for a computer in his residence because he could have accessed the internet from other locations." *Id.* at 627. Bach argued that the affidavit should have demonstrated that the specific IP address actually known to be involved in the alleged criminal activity was the specific computer located at his residence. Like Bach, Jackson claims that the Affidavit fails to connect the criminal conduct with a particular computer located inside his residence.

The Eighth Circuit panel in *Bach* rejected the argument that an IP address connected to Bach's residence was required for a search warrant to issue for Bach's residence. "[I]t was reasonable to believe on the basis of the other

information in the affidavit that Bach had a computer at his residence where he engaged in chats and received or stored images. We conclude that the information contained in the application to search Bach's residence, for a computer and data contained on the computer and storage devices, was sufficient to create probable cause that evidence of criminal activity would be found there." *Bach*, 400 F.3d at 628.

In this case also, it was reasonable for the magistrate to conclude that Jackson would seek child pornography from the privacy of his residence, where a computer could be most protected from outside scrutiny. This is the sort of common-sense determination that is entitled to deference pursuant to *Gates*. But in addition to a common-sense determination built upon the nature of the crime, the officer's belief that evidence would be found in the privacy of the residence was based on the officer's previous training and experience in child pornography investigations. Thus, the Affidavit asserted that

> [i]ndividuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child pornography material, that is, their pictures, films, video tapes,

> magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., *in the privacy and security of their home* or some other secure location.

Doc. 94-1 at 20, ¶ 41c (emphasis added). The *Gates* factors-- "practicality, common sense, a fluid and nontechnical conception of probable cause, and deference to the magistrate's determination"--all should be considered in the probable cause review. *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc).

The Affidavit in this case also cites *Gourde*, wherein a Ninth Circuit panel found that the facts and circumstances of that case met the "fair probability" test necessary to justify a "look further" into Gourde's computer located in his residence. *Id.* The *Gourde* affidavit explained that a prior search of the owner and operator of the Lolitagurls.com website resulted in a list of subscribers, including subscriber name, home address, date of birth, email address, and length of membership. Based upon Gourde's two-month subscription to the Lolitagurls.com website, the affiant concluded that it was "fairly probable that [Gourde] was a child pornography collector and maintained a collection of child pornography ...."

9

*Gourde*, 440 F.3d at 1068.

The case cited by Defendant Jackson, *United States v. Weber*, 923 F.2d 1338 (1991), is distinguishable from *Bach* and *Gourde*. *Weber* is a pre-internet mail case, wherein defendant Weber merely ordered four photographs via mail, but the search warrant sought additional child pornography (beyond the four photographs) in the residence without any additional manifestation of Weber's ongoing intention to obtain child pornography materials.

With the advent of the Internet and membership-only child pornography websitess, an entirely different probable cause analysis is appropriate. The *Gourde* panel believed that a subscription to a child pornography website "manifested [Gourde's] intention and desire to obtain illegal images." *Gourde*, 443 F.3d at 1070. This manifestation of intent to obtain "unlimited access" to a collection of child pornography images caused the panel to categorize Gourde as someone other than an accidental browser, a casual internet tourist, or a potential customer unlikely to muster the nerve to become a member. *Gourde*, 440 F.3d at 1070. Instead, the *Gourde* panel made "the reasonable inference that Gourde had

received or downloaded images" on his computer because he had gone to the trouble to subscribe to a child pornography website. *Id.* at 1071. This reasonable inference was based in part on the "collector profile" contained in the *Gourde* affidavit.

As with the Jackson affidavit, the *Gourde* affidavit stated that collectors of child pornography store their child pornography materials in a secure place, typically in their homes. *Gourde*, 440 F.3d at 1072. Likewise, the Jackson affidavit avers that "[t]hese collections are often maintained for several years and are kept close by, *usually at the collector's residence*, to enable the individual to view the collection, which is valued highly." Doc. 94-1 at ¶ 41d (emphasis added).

The *Gourde* affidavit had no IP address for any computer, much less a computer known to be located within the residence. Nevertheless, the Ninth Circuit panel in *Gourde* approved the probable cause finding that supported a residential search, relying on the *Gates* factors of common-sense and practicality in concluding that it was fairly probable that evidence of child pornography would

be found in Gourde's home computer, given the collector profile contained in the affidavit and the fact that Gourde had purchased a membership in a child pornography website. The *Gourde* panel reiterates that great deference should be paid to the magistrate judge's determination and that a "grudging or negative attitude" or "hypertechnical ... analysis" should be avoided. *Gourde*, 440 F.3d at 1069 (citing *United States v. Ventresca*, 380 U.S. 102, 108-09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

In support of his section 2255 Motion, Defendant submits the Declaration of Marcus Lawson, President of Global CompuSearch LLC. Careful examination of this Declaration leads the Court to believe that it is not pertinent to the facts of this case, in that the Lawson Declaration focuses on what investigation is necessary to tie a known IP address to an unknown individual and, then, by extension, to that unknown individual's home address. *Jackson* is not that kind of case. In *Jackson*, the identity of the individual Shawn Jackson was known, as was his home address, but the location of the computer used to commit the alleged crime was not known. In fact, the answer to that question was the very question that the Jackson search

warrant sought to answer.

Defendant argues that instead of a residential search, the search should have been directed to the IP address of the computer used to make the payment to PayPal, wherever that computer was located. That argument, however, ignores the fact that the PayPal payment was not the crime, and there is no logical reason to assume (especially in the current Internet landscape wherein individuals often access the Internet by means of multiple computers in multiple locations), that a computer used to make a PayPal payment is necessarily the computer used to commit the crime of receipt and possession of child pornography. Moreover, the specific benefits afforded by a *residential* computer to the commission of this crime are explicitly set forth in the Jackson Affidavit, whereas no such contextual detail favors the PayPal payment computer as the likeliest site for receipt and possession of child pornography.

Defendant points out that the PayPal transaction provided a Yahoo! email address that consisted of an abbreviation of the name of Defendant's business, and the investigation showed that Defendant's license plate also was an abbreviation

of the business name. On these facts, Defendant appears to argue that it would have made more sense to search the business, instead of the residence. That argument has some appeal, but it is contradicted by common sense and the officer's training and experience that generally such materials are stored within the residence.

Defendant also argues that the PayPal payment was not tied to Jackson's residence. This is not quite correct. The Affidavit alleges that, when making the PayPal payment, Shawn Jackson provided a primary address of "p o box ### east helena MT, 59635 US". Doc. 94-1, ¶ 36. The Affidavit also alleges that, according to the records of the United States Postal Service, this post office box was associated with Shawn Jackson's physical address.[1] Further investigation and

---

[1] The Affidavit states that "[t]he United States Postal Service indicates that the PO Box is affiliated with Shawn Jackson with a physical address of "[## street name], Clancy, MT 59634". Doc. 94-1, ¶38. Thus, Agent Reller did not misrepresent to the magistrate that this post office was associated with the personal residence. In addition, the fact that the address was Defendant's residence was corroborated by two other sources. Defendant's assertion that his business supplied the payment for the post office box does not contradict the allegations of the Affidavit, *i.e.*, that the United States Postal Service associated

surveillance confirmed that this indeed was Shawn Jackson's residence, and it was the same address provided by the United States Postal Office and associated with the East Helena post office box. Thus, information provided in the PayPal transaction was associated with Defendant Jackson's residence, and the actual street address of the residence was verified through the United States Postal Service, through motor vehicle registration, and through surveillance.

The totality of the circumstances favored the residential computer as the most likely location for storage of evidence of the alleged crime, rather than the computer used to make the PayPal payment. The Lawson Declaration does not persuade the Court that the search warrant was not supported by probable cause, and in fact the Declaration provides the sort of flyspecking and hypertechnical analysis against which *Gates* cautions.

While it is true that the Jackson Affidavit did not guarantee that evidence of child pornography would be found at Jackson's residence, and it did not guarantee

---

that post office box with a physical address that was subsequently verified to be Defendant's residential address.

that such evidence could not be found anywhere else either, the Affidavit did not need to make those guarantees. It was just most likely that evidence of child pornography would be found in the privacy and security of Jackson's home– and more likely there than anywhere else. This is very much a common-sense understanding of the nature of this crime. At the time the Affidavit was prepared, the facts and circumstances that *were* known to law enforcement pointed strongly to the home computer as the most likely repository for storage of child pornography materials. That totality of the circumstances gave rise to a fair probability that the evidence sought would be found within Jackson's residence and his home computer. Defendant's arguments to the contrary pointing instead to the PayPal payment computer are without merit.

Even if probable cause were found to be lacking, the *Leon* good faith exception would have supported the search conducted pursuant to the warrant because a reasonably well-trained officer would not have known that the search was illegal despite the magistrate's authorization. *See Leon v. United States*, 486 U.S. 897, 922 n.23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Agent Reller did not

mislead the magistrate, and Reller's Affidavit is not so lacking in indicia of probable cause as to render the agents' reliance on the warrant to be unreasonable. Clearly, the agents in this case acted in good-faith reliance on the search warrant. Defendant makes no attempt to challenge the detachment or neutrality of the magistrate. The Court concludes that the *Leon* good faith exception would apply on these facts.

Therefore, there is no reasonable probability that a motion to suppress would have resulted in a different verdict. This district court concludes that trial counsel was not constitutionally ineffective for failure to file a motion to suppress the evidence found during a search of Defendant's residence. That decision did not fall "outside the wide range of professional competence." *Strickland*, 466 U.S. at 689. Defense counsel was not ineffective in this regard because such a motion would have been futile.

**Conclusion**

Thus, having considered the Defendant's Motion, the government's Answer, the Court file, and all the record of this case, the Court concludes that the

Defendant is not entitled to relief. Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Document 94) is DENIED. Let judgment enter.

Finding that the Defendant has failed to make a substantial showing of the denial of a constitutional right and that no jurist of reason would debate the correctness of denying Defendant collateral relief,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify counsel of entry of this order.

Done and Dated this 26th day of July, 2011.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE